**SWISHER, Plaintiff-Appellant, v MIAMI MOTORS AND FIRST DISCOUNT CORPORATION, Defendants-Appellees.**

Ohio Appeals, Second District, Montgomery County.

No. 1917.   Decided April 15th, 1947.

Oldman and Oldman and Carl W. Norman, Dayton, for plaintiff-appellant.

Shaman, Winer and Shulman, Dayton, for defendants-appellees.

## OPINION

By HORNBECK, J.

This appeal on questions of law is from a judgment of the Common Pleas Court affirming a judgment of the Municipal Court of the city of Dayton, dismissing plaintiff's petition against both defendants, upon their motion, at the conclusion of plaintiff's evidence, on trial had to the Judge in the absence of a jury.

The action was for breach of warranty given by defendant, Miami Motors, to the plaintiff when he purchased from it a 1938 Packard, 4-door Sedan. The selling price was $887.00, which with tax and title cost totaled $917.41, upon which plaintiff made a down-payment of $500.00 and executed his note and mortgage for the balance, which note was transferred to the defendant, First Discount Corporation for value before due. Plaintiff prayed for judgment against Miami Motors in the sum of $541.00 and against the First Discount Corporation in the sum of $80.00, representative of two monthly payments on the balance due on the note. Cancellation of the note and mortgage is prayed.

At the outset it should be observed that inasmuch as the case was disposed of in the trial court on a motion for judgment at the end of plaintiff's evidence, all of the testimony in his behalf must be given the most favorable interpretation. So doing, if he made a prima facie case the trial judge should not have dismissed his action.

Manifestly the judgment is correct insofar as it relates to the cause of action against the First Discount Corporation.

The trial judge, upon entering judgment for the defendants, made, upon request of plaintiff, separate findings of fact and law. Upon the facts specifically determined the court held, as a matter of law, that inasmuch as the defendant dealer "made all necessary repairs on said car within said warranty period and all other repairs as requested by plaintiff within the terms of the warranty, etc. he had observed all obligation enjoined upon him by the terms of the warranty." He further found that "this express warranty was limited to a period of thirty days; the evidence shows, by the plaintiff's own testimony, that there was never any offer made to return the car during the thirty day warranty period." That three days after the warranty period expired the defendant dealer made repairs on the car at the request of the plaintiff, and that the car was not returned until January 26th "about thirty days after the warranty period expired, when the car was left on the defendant's lot without any previous announcement or request made for satisfaction." The court concludes that the defendant dealer complied with all terms of its warranty as a matter of law and that the plaintiff failed to establish a case under his statement of claim.

Six errors are assigned which may be encompassed under two headings. First, that the conclusions of law upon the findings of fact are not correct; and secondly, that the judgment is against the law and the manifest weight of the evidence. Although, as we view it, a construction of the language of the warranty is not determinative of this appeal, it is necessary that we consider this question as against the possibility that we be in error upon the one ground upon which we base our decision.

Factually, it appears upon the plaintiff's own testimony and his supporting evidence that he had trouble with the operation of the Packard car from the date of its delivery and almost continuously during all of the time that he had it in his possession; that for about 28 of the 30 days succeeding the date of purchase the car would not operate satisfactorily because it would not start and would frequently stall when plaintiff would be required to stop it at a traffic light. It also developed knocks in the motor. The dealer was considerate and made efforts to correct the mechanical defects, but without success. It also directed the plaintiff to take the automobile to the Packard Company in Dayton and to have them repair it. However, for ten days the car stood where it was placed by the plaintiff when he took it to the company and

no effort was made to attend to it, although, the company promised to repair it during the ten day period. On one occasion, probably the last time the car was taken to the dealer, plaintiff expressed his satisfaction with its operation, which observance he admitted, but stated that the good condition only remained for about one day. Finally, more than thirty days after the date of purchase, early in January, 1946, plaintiff took the car to an auto mechanic of twenty-five years experience, who reported that certain functional parts of the car were not in such condition as to operate and properly run the car mechanically; that one of the bearings was galled to the crank shaft; that the connecting rod and one main bearing were not good; that the drive shaft was rotted. This mechanic advised against any attempt to repair the automobile which, he said, would cost from 150 to 175 dollars. He also ventured the opinion that the condition of the car, as he found it, was of long-standing and had been brought about by usage prior to the time that the plaintiff acquired it.

Upon learning the condition of the car as reported by the mechanic, the plaintiff returned it to the dealer on the 26th of January, 1946, placing it upon the dealer's lot and leaving it without any notice to the dealer of the purpose for which it was left.

We first consider several questions arising upon the obligation of the dealer under the warranty which was given to the plaintiff at the time that he purchased the car. The warranty is a part of the Maximum Price Regulation 540, a part of Section 7 of the Regulation being (c) thereof, as follows:

"Used car described below, including any equipment named in Appendix D of Maximum Price Regulation 540, is hereby warranted to be in good operating condition under normal use and service for a period of thirty days after delivery, or one thousand miles, whichever may first occur."

"We, the undersigned, agree, if said car is delivered during the above period to our place of business, to make with reasonable promptness any repairs or replacements which may be necessary to its good operating condition in accordance with normal use and service, at a cost to the purchaser named below of not more than 50% of the normal charge for such repairs or replacements. Our normal charge is not in excess of OPA ceilings.

* * * * ."

Good operating condition is defined in (b) of the regulation,

"Used car is in good operating condition when its functional parts, and those of its non-functional parts which are customarily attached to a car, are in a condition that will permit the used car to be driven safely and efficiently. Functional parts include but are not limited to: the chassis, motor, clutch, transmission, drive shaft, differential, steering mechanism, front axle, rear axle, brakes, battery and lighting system."

Upon the testimony of plaintiff's mechanic, in connection with the difficulty that plaintiff incurred in the use of the car, his evidence required the determination that the automobile which he purchased was not, upon the date thereof, nor within thirty days thereafter, in good operating condition and that the defect was in a functional part of the automobile. Likewise, it must be concluded that the plaintiff did not know of the functional defects at any time during the thirty days subsequent to its purchase. Whether or not, upon learning of the defects in the automobile, he returned it within a reasonable time thereafter should not, as a matter of law, have been resolved against the plaintiff at the conclusion of his testimony. 16 Am. Jur. 893.

What is the meaning of the dealer's warranty? The sale here was not "as is," which would not have enjoined upon the dealer any obligation to make any effort to put the car in running condition at its own expense. Manifestly, when it sold the car upon a warranty it assumed obligations in addition to and beyond that of an "as is" sale. Under the OPA regulations the dealer was entitled to sell the car at a higher price when accompanied with the warranty than in an "as is" sale. The first paragraph of the warranty is definite and unequivocal to the effect that the car is "warranted to be in good operating condition and to remain in such condition under normal use and service for a period of thirty days after delivery, or 1000 miles, whichever may first occur." Unless this is modified by some subsequent portion of the warranty, there is no doubt as to its meaning. The second paragraph of the warranty provides that,

"We, * * *, agree, if said car is delivered during the above period to our place of business, to make with reasonable promptness any repairs or replacements which may be necessary to its good operating condition in accordance with normal

use and service, at a cost to the purchaser named below of not more than 50% of the normal charge for such repairs or replacements."

Manifestly, the second paragraph should not be construed to change the obligation of the first paragraph unless the language is such as to require it. If the only obligation of the dealer upon the warranty is to make repairs during thirty days after its delivery at a cost of 50% of normal charge, the purchaser may be obligated, immediately and during the thirty day period, to incur heavy expenses, in addition to the purchase price, to put the car in such condition as is contemplated in the first paragraph. Such construction might add to the first cost of the car many hundreds of dollars. This certainly is not within the spirit of the act and, in our judgment, is not required by the letter thereof. The first paragraph enjoins upon the dealer the obligation to turn over to the purchaser a car in good operating condition at the date of the purchase and to assure that it will remain in such condition during the succeeding thirty days, or until it is driven 1000 miles, whichever may first occur. The second paragraph refers only to such necessary minor repairs or replacements as are required to keep it in the good operating condition warranted.

Our construction is in accord with the interpretation of the District Enforcement Attorneys for the OPA, as appears in their opinion set out in letters supplementing plaintiff's brief. A holding somewhat analogous is also found in the case of Duffey, et al., v Howell, et al., Appellate Department, Superior Court, Los Angeles County, Cal., No. Civ. A 6120, Trial Court No. 726,271, reported in 166 P (2d) 411. A case more directly in point is that of Martelli, et al., v Roth, et al., Municipal Court, Los Angeles, Cal., found in Pike and Fischer OPA Desk Book, Vol. 3, p. 2230. It calls attention to the principle recognized in Ohio that in construing a statute the interpretation placed upon it by an administrative body charged with its interpretation carries some weight. **State ex rel Brower v Graves, 89 Oh St 24, State ex rel Woodman Accident Company v Conn, 116 Oh St 127, State ex rel Automobile Machine Company v Brown, 121 Oh St 73.** In this connection the court, in the cited case, sets out a communication from Mr. Myron Duhl, Chief Automotive Supply Enforcement Branch of the OPA, Washington, D. C., in which, in part, it is said,

"The next question is whether a dealer who refuses to live

up to his warranty is in violation of the regulation. A warranted price may be charged for a warranted car as defined in Section 7. In Section 7, a warranted car is defined as a car in good operating condition for which the seller furnishes to the purchaser the warranty set out in that section. Under this definition, if a warranted price is charged for a car not in good operating condition, the seller is in violation of the regulation to the extent that he charged a price which exceeds the 'as is' price. While the car must be in good operating condition at the time of the sale, and evidence as to its condition on that date is of primary importance, the condition of the car after the date of sale may indicate, in some cases, whether it was in good operating condition on that date."

We quote from this opinion somewhat at length because it may not be available to counsel. Further comment is made as showing administrative interpretation from statement of considerations involved in the issuance of Amendment 5 to Maximum Price Regulation 540, of date February 1, 1945, as follows:

"Six months operating experience under the Regulation has disclosed that many sellers at warranted prices evade the obligations they assume when they sell at warranted prices. Cars needing reconditioning and repairing have been sold at such prices, although such cars have not been reconditioned or repaired. * * * * When purchasers returned faulty cars to such sellers they were told that the sellers would pay 50% of the cost of the repairing and reconditioning. In other words, the sellers would bear this cost for work they should have done before the cars were sold at warranted prices and for which an allowance was included in the warranted prices. **Such action has always been a violation of the regulation.** (Emphasis supplied) Used cars have to be in good operating condition when sold at warranted maximum prices."

The opinion in its entirety merits careful reading and consideration.

It is our conclusion, then, that upon plaintiff's resting his case he had made a showing of a violation of the warranty in that the car was not in good operating condition at the time that he purchased it; and further, that it was not in good operating condition at any time during the thirty days succeeding the date of purchase; nor had he operated the car a thousand miles before the discovery of its condition.

If the interpretation of the warranty which we make is correct, the plaintiff would have been entitled to have the court adjudge his case upon a different concept of the law than was adopted by the trial judge, and if there were no other infirmity in plaintiff's case, a reversal of the judgment would be required.

There is, however, in our judgment, material weakness in plaintiff's case upon a demurrer to the evidence in that there was no showing of the observance by him of the obligation enjoined by a part of **paragraph (3) §8449 GC**, as follows:

"When the goods have been delivered to the buyer, he cannot rescind the sale * * *, if he fails to notify the seller within a reasonable time of the election to rescind, * * * ."

The admitted fact testified by the plaintiff is that when he returned the car to the dealer's lot he did not then or at any time thereafter, inform the dealer of his election to rescind under the warranty. In view of the prior conduct of the respective parties the leaving of the car could not have been implied notice to the dealer of the intention of the purchaser. Proof of the observance of the provisions of §8449 GC was upon the buyer, the plaintiff, as a part of his case. Failure to meet this requisite of proof required the sustaining of the motion for a judgment as upon a demurrer to the evidence.

The judgment will be affirmed.

WISEMAN, PJ, and MILLER, J, concur.